Allison W. Maxim
MAXIM LAW, PLLC
Ramsey Professional Building
311 Ramsey Street, Suite 201
Saint Paul, Minnesota 55102
Phone: (651) 294-2407
Fax: (651) 294-2361
Allison@Maxim-Law.com
Attorney *pro hac vice* for Respondent

Diane Kaer
Attorney at Law
California State Bar Membership No. 120648
14827 Energy Way
Apple Valley, Minnesota 55124
Phone: (952) 432-4131
Fax: (952) 432-4822
Diane@Kaerlaw.com
Attorney for Respondent

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CARLOS CHIRAMBERRO LARRATEGUI,<br>    Petitioner,<br><br>vs.<br><br>VALERIA EGUIGUREN LABORDE,<br>    Respondent. | Case No.: 2:13-cv-01175-JAM-EFB<br><br>AFFIDAVIT OF RESPONDENT VALERIA EGUIGUREN LABORDE |

**I, VALERIA EGUIGUREN LABORDE,** being duly sworn upon oath, states and declares as follows:

1. I submit this affidavit in support of my counter-petition and my request that Petitioner (hereinafter "Father") request for access to S.C. prior to the trial in this

proceeding be denied, or in the alternative, that if the Court grants father access with S.C. prior to the trial in this matter, that it be restricted and supervised.

2. It is my understanding Father is requesting a visit with S.C. from Saturday November 30, 2013 to Sunday, December 1, 2013. While I believe S.C. should have contact with her father in genera, I think an unsupervised visit of this length with Father at this time is too risky and will be extremely psychologically harmful to S.C. because Father will use the time to badger S.C. about her not returning to Argentina and he will inappropriately involve her in his disagreement with me because he cannot control his anger toward me.

3. S.C. has had unrestricted contact with her father by phone and Skype during her time in the United States. She has also had contact with him on Facebook, email and Gmail chat. Attached hereto as **Exhibit 5**, is a true and correct printout and translation of an exchange between S.C. and her father on Facebook from March 2013. In this exchange, the Father cruelly blames S.C. for remaining in the U.S., dragging her into a legal dispute just like he has done for the past several years in Argentina. This would be damaging to any child, but S.C. is a particularly vulnerable child given her cognitive and emotional functioning.

4. After this damaging exchange on Facebook between S.C. and her father, S.C. broke down psychologically and was extremely distraught. She threw things at the walls, acted out violently towards me, and tried to climb out the second story window of her bedroom she was so distressed.

5. In addition to Father's damaging words to S.C. via Facebook, I overheard

a conversation between S.C. and her father just this past week in which he was telling her he will be taking her "home" for her birthday this year and that when he visits California, she is going to spend time with him and he will rent a cabin, take her to the beach, and take her shopping. It sounds to me as if Father plans to keep S.C. and not return her to her regular routine pending the outcome of this matter, which would be psychologically damaging to S.C.

6. The other thing that I have become aware of is that Father is represented by an attorney, Fabiana Quaini, from Argentina. I was very surprised to hear Ms. Quaini is working with Father on his Hague case as I had consulted with her in early 2012 on the Argentinian proceedings to represent me there. I paid her a consultation fee and provided her information about the situation in Argentina with S.C. I can provide the Court copies of my email exchanges with Ms. Quaini if that is necessary. It is my understanding that Ms. Quaini, who is licensed in Argentina and California is accompanying Father to the US for this Hague case. This makes me very suspicious because I have previously consulted with her and she has confidential information about this matter and because I cannot think of any reason she would come here with Father other than to try and circumvent this Hague matter to perhaps enforce the 2010 Argentinian court order or to keep S.C. with her and Father despite this proceeding moving forward.

7. I understand Father feels betrayed and extremely angry that I kept S.C. in California. He has exhibited his anger by threatening me saying "watch out for yourself, I'm closer than you think." He repeatedly contacted the counselor at S.C.'s

school, Susana Deol, in March 2013 saying horrible things about me to the counselor. I fear his anger will lead to him to feel justified in keeping S.C. with him while he is in California.

8.      Father is so seething with anger toward me that he cannot maintain neutrality with S.C. He cannot understand that I made a judgment call based on S.C.'s vulnerable psychological functioning and her emotional and cognitive needs after considering the grave risk and intolerable situation she faces if she is returned to Argentina. This is now a legal issue to be decided by this Court, but that will not stop him from recklessly spewing his hatred for me and damaging S.C. I am gravely concerned and afraid for S.C.'s wellbeing if Father is granted anything more than a supervised visit.

9.      Additionally, Father raised money online through the website noblezaobliga.com and change.org. He claims S.C. "suffers from very small problems" in her health and language. He claims that she has had regression in speech since being in the United States, which is not true. See **Exhibit 6**. He does not understand the real medical issues S.C. is dealing with and will certainly not listen to me about it.

10.     Attached hereto as **Exhibit 7** is a true and correct copy of S.C.'s last speech and language evaluation, which indicates she will no longer receive speech services in Argentina.

11.     Father also attached medical records to his petition, but failed to provide a translation of the records. It appears he is hoping the court will view the medical records as evidence of his attentiveness to S.C.'s medical needs. However, the medical

fact show that not all of the visits were medical appointments for S.C., and how poorly S.C. was actually doing under his care in Argentina. Attached hereto as **Exhibit 8** is a certified translation of a significant portion of the medical records submitted by Father evidencing S.C.'s vulnerability and poor progress in Argentina.

12. I respectfully request Father's request for a visit with S.C. be denied pending the outcome of this matter. If this Court is going to order a visit between S.C. and Father the weekend prior to trial, I ask that the Court order it to be a supervised visit at a safety center or by a Spanish speaking third party so that Father's conversation with S.C. can be monitored and S.C. does not have to bear the burden and be psychologically harmed by Father's damaging words to her. This will also proactively prevent anything Father and Fabiana Quiani think they can do to circumvent this Hague matter.

Under penalty of perjury, the declarant, Valeria Eguiguren Laborde, hereby swears and attests that the aforementioned statements are true.

Executed this 25 day of November, 2013 at TRACY, California.

_____
Valeria Eguiguren Laborde

State of   California
County of   San Joaquin
On November 25, 2013 before me, Rajpreet Basra, Notary Public, personally appeared Valeria Eguiguren Laborde,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under **PENALTY OF PERJURY** under the laws of the **State of California** that the foregoing paragraph is true and correct.
Witness my hand and official seal.
_Rajpreet Basra_ (Notary Seal)
Signature of Notary Public

RAJPREET BASRA
Commission # 1927847
Notary Public - California
San Joaquin County
My Comm. Expires Mar 6, 2015