B J Fadem Esq.    SBN: 118819*
* Certified Family Law Specialist - State Board of Specialization
Ron B. Nerio, Esq, SBN: 251228
Magdalena A. LaBranch, Esq. SBN: 262783
Corrine Gaxiola, Esq.  SBN: 270060
LAW OFFICES OF B J FADEM & ASSOCIATES, APC
111 N. Market Street,  Suite 910
San Jose, CA  95113
Telephone: 408-280-1220
Fax: 408-971-9940
bjfadem@fademlaw.com
Attorneys For Petitioner
DANIEL CARLOS CHIRAMBERRO LARRATEGUI

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CARLOS CHIRAMBERRO LARRATEGUI,<br>          Petitioner,<br><br>vs.<br><br>VALERIA EGUIGUREN LABORDE,<br>          Respondent. | Case No.:  2:13-cv-01175-JAM-EFB<br><br>POINTS & AUTHORITIES IN SUPPORT OF PETITIONER'S IN LIMINE MOTION FOR SUMMARY JUDGMENT<br>[28 U.S.C. Rule 56]<br><br>Trial Date:    12/02/2013<br>Courtroom:  6<br>Judge John A. Mendez |

## I.

## <u>INTRODUCTION</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [28 U.S.C. Rule 56]

Petitioner's request is timely and this Court has the jurisdiction and authority to grant said summary judgment.  [28 U.S.C. Rule 56(b)]

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Points & Authorities in Support of Motion for Summary Judgment
Page 1

## II.

## ARGUMENT

A.     THE UCCJEA

"(a) A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying this chapter and Chapter 2 (commencing with Section 3421).

(b) Except as otherwise provided in subdivision (c), a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this part must be recognized and enforced under Chapter 3 (commencing with Section 3441).

(c) A court of this state need not apply this part if the child custody law of a foreign country violates fundamental principles of human rights. (Rep & Ad Stats 1999, C867) [California Family Code §3405]

As a result, custody orders issued by foreign courts are asserted the same as "states" in California Family Code §§3443 and 3453.

California Family Code §3443 provides:  "(a) A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this part or the determination was made under factual circumstances meeting the jurisdictional standards of this part and the determination has not been modified in accordance with this part.

(b) A court of this state may utilize any remedy available under other laws of this state to enforce a child custody determination made by a court of another state. The remedies provided in this chapter are cumulative and do not affect the availability of other remedies to enforce a child custody determination."

California Family Code §3453 provides: "A court of this state shall accord full faith and credit to an order issued by another state, and consistent with this part, enforce a child custody determination by a court of another state unless the order has been vacated, stayed, or modified by a court having jurisdiction to do so under Chapter 2 (commencing with [Fam. Code §3421])."

Argentina issued a custody order granting full custody of S.C. to Petitioner in September 2010. Respondent participated in those proceedings, as well as the continuing litigation in this case through the Argentina courts.

"The UCCJEA takes a strict "first in time" approach to jurisdiction. Basically, subject to exceptions not applicable here (Fam. Code, §§3422, subd. (a)(1)-(2), 3423, subds. (a) & (b), 3450, subd. (a)(1)-(2)), once the court of an appropriate state (Fam. Code, §3421, subd. (a)) has made a "child custody determination," that court obtains "exclusive, continuing jurisdiction . . . ." (Fam. Code, §3422, subd. (a).) The court of another state: (a) Cannot modify the child custody determination (Fam. Code, §§3421, subd. (b), 3422, subd. (a), 3423, 3446, subd. (b)); (b) Must enforce the child custody determination (Fam. Code, §§3443, 3445, 3446, 3448, 3453); and (c) "[M]ay issue a temporary order enforcing either: "(1) A visitation schedule made by a court of another state. "(2) The visitation provisions of a child custody determination of another state that does not provide for a specific visitation schedule." (Fam. Code, §3444, subd. (a).) A "'[c]hild custody determination'" is defined as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child." (Fam. Code, §3402, subd. (c).) [In re Marriage of Paillier (2006) 144 Cal.App.4th 461, 470]

"For purposes of the Act's definitional and jurisdictional provisions (Fam. Code, §§3400-3430), a court of this state must "treat a foreign country as if it were a state of the United States . . . ." (Fam. Code, §3405, subd. (a).) Moreover, "a child custody determination made in a foreign

country under factual circumstances in substantial conformity with the jurisdictional standards of [the Act] must be . . . enforced" under the Act's enforcement provisions (Fam. Code, §§3441-3457). (Fam. Code, §3405, subd. (b).) The only exception is that "[a] court of this state need not apply [the UCCJEA] if the child custody law of [the] foreign country violates fundamental principles of human rights." (Fam. Code, §3405, subd. (c).)" [In Re Marriage of Paillier, supra at p. 470]

Petitioner has a valid custody order from Argentina. Respondent participated in the litigation regarding the custody in Argentina. [Statement of Undisputed Facts 5-7]

Pursuant to the UCCJEA, California must give full faith and credit to the custody order from Argentina.

B.    HAGUE PETITION

Petitioner seeks relief pursuant to the Hague Convention on Civil Aspects of International Child Abduction – codified by the United States in 42 U.S.C. 11601 et seq.

A Petitioner establishes the elements of wrongful removal or retention by demonstrating by a preponderance of the evidence that:

> (1) the habitual residence of the child immediately before the date of the allegedly wrongful removal or retention was in the country to which return is sought;
>
> (2) the removal or retention breached the Petitioner's custody rights under the law of the child's habitual residence; ...." [Patrick v. Rivera-Lopez (D.P.R., 2013) pages 11-13]

In this case, it is undisputed that an order issued by Argentina required Respondent to return S.C. to Argentina on or before January 29, 2013. [Undisputed Statement of Facts 8]

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Points & Authorities in Support of Motion for Summary Judgment
Page 4

1       Furthermore, it is undisputed that prior to Respondent's court authorized visitation of

2  December 13, 2012 until January 29, 2013, S.C. resided in Argentina. [Statement of Undisputed

3  Facts 8]

4       Petitioner was granted full custody of S.C. in September 2010 by the Argentina courts.

5  [Undisputed Statement of Facts 6]

6       Therefore, as a matter of law, the undisputed facts establish that Respondent wrongfully

7  retained S.C. in the United States. [42 U.S.C. 11601 et seq.; <u>Patrick v. Rivera-Lopez</u> (D.P.R.,

8  2013) pages 11-13]

9       As a result, absent Respondent sustaining an exception, the minor child *must* be returned

10  to Argentina. [<u>March v. Levine</u>, 249 F.3d 462 (6th Cir., 2001)]

11      C.     <u>RESPONDENT'S ALLEGED EXCEPTIONS</u>

12          1.    **Article 13(b)**

13       Respondent has the burden to prove by clear and convincing evidence that there is a

14  grave risk that her return to Argentina would expose her to physical or psychological harm or

15  otherwise place the child in an intolerable situation. [Article 13(b) of the Convention on Civil

16  Aspects of International Child Abduction]

17       The situations that the United States contemplates would satisfy Article 13(b) include

18  sending a child back to a "zone of war, famine or disease" as well as "cases of serious abuse or

19  neglect, or extraordinary emotional dependence, when the court in the country of habitual

20  residence, for whatever reason, may be incapable or unwilling to give the child adequate

21  protection." [Friedrich v. Friedrich, 78 F.3d 1060, 1069 (6th Cir. 1996)]

22       Respondent's claim that grave risk of harm would befall S.C. if returned to Argentina is:

23  (1) That she was "misdiagnosed" by Argentine doctors and that he genetic orders and the

24

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Points & Authorities in Support of Motion for Summary Judgment
Page 5

Borderline Intellectual Functioning mood disorder that has caused S.C.'s immaturity emotionally and mentally, was not being treated properly in Argentina; (2) That if S.C. does not continue the treatment she is receiving in the United States, she is at risk of developing Borderline Personality Disorder or bipolar; (3) That the environment in Argentina is seriously inadequate to meet S.C.'s medical and psychological needs; (4) That S.C. was eliciting "overly sexualized" behaviors; and (5) Had infestation of lice, poor hygiene, and "inappropriate discussions" with Father, that until age 11 S.C. slept in same bed with Father, and that until age 11, Father washed her hair and helped her with her shower. [Undisputed Statement of Fact 10]

First, the allegations Respondent utilizes for her Article 13(b) exception were all known to her and presented to the Argentina court in her Request for change of custody in June 2012. [Undisputed Statement of Facts 11 & 12]

All the factors raised are merely asking this court to determine "custody" because Respondent did not prevail in her arguments in Argentina. The Courts pursuant to a Hague Petition *cannot* entertain custody issues whatsoever. Facts relating to the child's best interest or who is a better parent is not relevant to the proceedings. They are the issues to be determined by the court with jurisdiction – Argentina. [Giampaolo v. Erneta, 390 F.Supp.2d 1269 (N.D. Ga., 2004); Núñez-Escudero v. Tice-Menly, 58 F.3d 374,377 (8th Cir. 1995)]

the "grave risk" defense is narrow, and must be established by clear and convincing evidence. [Maurizio R. v. L.C. (2011) 201 Cal.App.4th 616]

In analyzing the "grave risk of harm" exception, Courts must make a finding that (1) the courts of the country of habitual residence was incapable of or unwilling to adequately protect the child; and (2) there are no alternative remedies that could be implemented to avoid or

1  minimize the risk of harm, if any, that would otherwise exist. [In re Marriage of Forrest and

2  Eaddy (2006) 144 Cal.App.4th 1202]

3      This was further expressed and clarified by the March court finding that a grave risk of

4  harm for the purposes of the Convention can exist in only two situations. First, there is a grave

5  risk of harm when return of the child puts the child in imminent danger prior to the resolution of

6  the custody dispute--e.g., returning the child to a zone of war, famine, or disease. Second, there

7  is a grave risk of harm in cases of serious abuse or neglect, or extraordinary emotional

8  dependence, when the court in the country of habitual residence, for whatever reason, may be

9  incapable or unwilling to give the child adequate protection. [March v. Levine, 249 F.3d 462]

10     The U.S. Department of State opined: "This provision was not intended to be used by

11  defendants as a vehicle to litigate (or relitigate) the child's best interests. Only evidence directly

12  establishing the existence of a grave risk that would expose the child to physical or emotional

13  harm or otherwise place the child in an intolerable situation is material to the court's

14  determination. The person opposing the child's return must show that the risk to the child is

15  grave, not merely serious.

16     A review of deliberations on the Convention reveals that "intolerable situation" was not

17  intended to encompass return to a home where money is in short supply, or where educational or

18  other opportunities are more limited than in the requested State...." Public Notice 957, 51

19  Fed.Reg. 10494, 10510 (March 26, 1986).

20     The Article 13(b) defense "do[es] not authorize a court to exceed its Hague Convention

21  function by making determinations, such as who is the better parent, that remain within the

22  purview of the court with plenary jurisdiction over the question of custody. To view the

23  defenses more broadly would frustrate the core purpose of the Hague Convention - to preserve

24

the status quo and deter parents from seeking custody of their child through, in effect, forum shopping. See Perez-Vera Report, supra, ¶ 34." [Avendano v. Smith, 806 F. Supp. 2d 1149, 1168 (D.N.M., 2011)]

Even accepting that all the allegations made by Respondent are true – it still falls seriously short of "grave risk" within the meaning of Article 13(b). Argentina is quite capable of determining custody issues – they have in this case for the past six (6) years. Articles 13(b) is not meant as a "trigger" for an abducting parent to "forum shop" and re-litigate custody issues in another court that she may believe would render a decision satisfactory to her. All of the "evidence" and allegations made by Respondent are completely irrelevant in this trial. They are only relevant in a custody proceeding. None of the allegations, as a matter of law, rise to the level of "grave risk" for the purposes of Article 13(b). Furthermore, they have already been adjudicated [and are still pending] before the Argentina court. Accordingly, as a matter of law, Respondent's affirmative defense / exception pursuant to Article 13(b) of the Hague Convention fails.

## 2. Article 13

Article 13 asserts: "The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views. In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence."

The very condition that Respondent asserts presents a "grave risk of harm" to S.C. has cause S.C. to be emotionally and mentally immature. [Statement of Undisputed Fact 13]

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Points & Authorities in Support of Motion for Summary Judgment
Page 8

1    As a matter of law, Respondent undisputedly counters her own affirmative defense.

2    Accordingly, Respondent's affirmative defense pursuant to Article 13 of the Hague Convention

3    must fail.

4                    **3.    Article 20**

5        Article 20 provides: "The return of the child under the provisions of Article 12 may be

6    refused if this would not be permitted by the fundamental principles of the requested State

7    relating to the protection of human rights and fundamental freedoms."

8        Respondent has the burden of proving an Article 20 exception by clear and convincing

9    evidence. [42 U.S.C. § 11603(e)(2)(A)]

10       "This seldom-cited and somewhat obscure provision was adopted as a compromise

11   between those countries that wanted a public policy exception in the Convention and those that

12   did not.38 It was meant to be "restrictively interpreted and applied ... on the rare occasion that

13   return of a child would utterly shock the conscience of the court or offend all notions of due

14   process." [Hazbun Escaf v. Rodriquez, 200 F.Supp.2d 603 (E.D. Va., 2002)]

15       "There is little case law in the United States focusing on this provision. However, the

16   State Department explains that "it should be emphasized that this exception, like the others, was

17   intended to be restrictively interpreted and applied, and is not to be used, for example, as a

18   vehicle for litigating custody on the merits or for passing judgment on the political system of the

19   country from which the child was removed." Fed.Reg. at 10510. See also Elisa Perez-Vera,

20   Explanatory Report: Hague Convention on Private International Law 426, 462 ¶ 118 (1981)

21   ("[S]o as to be able to refuse to return a child on the basis of this article, it will be necessary to

22   show that the fundamental principles of the requested State concerning the subject-matter of the

23   Convention do not permit it; it will not be sufficient to show merely that its return would be

24

incompatible, even manifestly incompatible, with these principles.").”  [March v. Levine, 136 F.Supp.2d 831, 855 (M.D. Tenn., 2000)]

“As of 1997 the Article 20 defense had successfully been invoked only twice internationally—in cases where the constitutionality of the Convention itself was challenged—and not at all in the United States. See Report of the Third Special Commission Meeting to Review the Operation of the Hague Convention on the Civil Aspects of International Child Abduction (17-21 March 1997), Permanent Bureau of the Hague Conference on Private International Law ¶ 78 (1997).”  [Hazbun Escaf v. Rodriquez, supra at footnote 36]

“Article 20 does not contemplate that courts applying the provision must compare the due process safeguards provided in the petitioner's country with those provided in the respondent's country or with some ideal notion of due process. See State Department Legal Analysis at 10,511”  [Hazbun Escaf v. Rodriquez, supra at footnote 40]

The exception is "not to be used, for example, as a vehicle for litigating custody on the merits or for passing judgment on the political system of the country from which the child was removed."  [Souratgar v. Fair at page 28, (S.D.N.Y., 2012)]

Respondent was born in Argentina;  and resided there until 2007.  She has admittedly litigated this case before the Argentina courts for six (6) years.  There is absolutely no evidence [let along clear and convincing] that Respondent has presented- or can present-to establish that the Argentina judicial system fails to protect human rights and fundamental freedoms.

Accordingly, Respondent's exception as set forth in her affirmative defense under Article 20 of the Hague Convention is not viable and fails.

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Points & Authorities in Support of Motion for Summary Judgment
Page 10

## III.

## CONCLUSION

Argentina has issued valid custody and orders for the return of S.C. to Argentina. Pursuant to the UCCJEA, California must give full faith and credit to these orders and enforce. The facts are undisputed that Respondent has litigated with representation in Argentina for the past six (6) years. There is not violation of fundamental rights that would cause California to refuse full faith and credit to the Argentina courts.

Furthermore, the undisputed facts clearly indicate that S.C.'s habitual residence is Argentina. That Petitioner was granted full custody of the S.C. by the Argentina court in September 2010. That in November 2012, the Argentina court issued an order allowing Respondent to take S.C. to the United States *for a visit* from December 13, 2012 until January 29, 2013. Respondent wrongfully retained S.C. in the United States on January 29, 2013. Respondent's exception pursuant to Article 13(b) of the Hague Convention fails as a matter law, as does her exceptions under Article 13 and Article 20. Accordingly, without any viable exceptions, the Court must order the return of S.C. to Argentina.

Petitioner accordingly requests a summary judgment in favor of his Petition and an Order for the Immediate Return of the minor child to Argentina.

Dated: 11/24/2013      Respectfully submitted,
*LAW OFFICES OF B J FADEM & ASSOCIATES, APC*


B J Fadem, Esq.

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Points & Authorities in Support of Motion for Summary Judgment
Page 11