B J Fadem Esq.      SBN:  118819
Ron B. Nerio, Esq, SBN:  251228
Magdalena A. LaBranch, Esq.  SBN:  262783
Corrine Gaxiola, Esq.   SBN:  270060
LAW OFFICES OF B J FADEM & ASSOCIATES, APC
111 North Market Street., Suite 910
San Jose, CA  95113
Telephone: 408-280-1220
Fax: 408-971-9940
Bjfadem@fademlaw.com

**Attorneys for Petitioner**
**DANIEL CARLOS CHIRAMBERRO LARRATEGUI**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| DANIEL CARLOS CHIRAMBERRO LARRATEGUI,<br>          Petitioner,<br><br>vs.<br><br>VALERIA EGUIGUREN LABORDE,<br>          Respondent. | PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO IN LIMINE MOTIONS<br><br>Case No.:  2:13-cv-01175-JAM-EFB<br><br>Date: 12/2/2013 – 12/6/2013<br>Time: 9:00AM<br>Courtroom: 6 |

## MOTION FOR SUMMARY JUDGMENT

1. PETITIONER'S MOTION FOR SUMMARY JUDGMENT IS TIMELY

Once again, Respondent has contradicted herself within her own pleadings.  As pointed

out, a Petitioner pursuant to Hague Convention on the Civil Aspects of Internation Child

Abduction is an "expedited" proceeding due to its unique nature – as well as a "summary"

proceeding.  Obviously there was no "discovery" conducted, this matter had already been

1  delayed by Respondent's tactics:  i.e. removing to federal court and then violating the court's

2  order to serve Petitioner within 30 days – not serving Petitioner whatsoever.

3       The cases clearly indicate that due to the accelerated proceedings, the normal notice for

4  summary judgment is not possible.

5  2.  THERE ARE NO TRIABLE ISSUES OF FACT

6       Interesting that Respondent claims there is no triable issue of fact – all undisputed facts

7  were taken directly from her verified Answer to the Petition and verified Counter Petition.

8  Petitioner did not use *any* of his affidavits or documents – only the certified copy and

9  certified translation of the Argentina order – which Respondent has acknowledged.

10  Therefore, to state there are disputed facts would attack the statements of her own verified

11  pleadings.  Furthermore, Respondent has failed to address each "undisputed statement of

12  fact" presented by Petitioner.

13  3.  ARTICLE 13(b) – GRAVE RISK OF HARM

14       Respondent's cited cases are actually *in support* of Petitioner's request for Summary

15  Judgement.  The case of *Van De Sande v. Van De Sande* involved a domestic violence abuse

16  case.  Furthermore, *Van De Sande* outlined the use of "undertakings" in Hague Convention

17  Civil Aspects of International Child Abduction:  "If handing over custody of a child to an

18  abusive parent creates a grave risk of harm to the child, in the sense that the parent may with

19  some nonnegligible probability injure the child, the child should not be handed over,

20  however severely the law of the parent's country might punish such behavior. In such a case,

21  any order divesting the abducting parent of custody would have to be conditioned on the

22  child's being kept out of the custody of the abusing parent until the merits of the custody

23  dispute between the parents could be resolved by the court in the abusive parent's country for

24

1    in order to ameliorate any short-term harm to the child, courts in the appropriate

2    circumstances have made return contingent upon `undertakings' from the petitioning parent."

3    Van De Sande v. Van De Sande 431 F.3d 567, 571

4        The court further defined "undertakings" and when they are appropriate:  "Return plus

5    conditions ("undertakings") can in some, maybe many, cases properly accommodate the

6    interest in the child's welfare to the interests of the countryof the child's habitual residence.

7    Often the bulk of the evidence concerning risk of harm will be found in that country and the

8    left-behind parent's defense to charges of abuse may be more difficult and costly to prepare

9    and present in the country to which the abducter has fled. But in cases of child abuse the

10   balance may shift against return plus conditions. "  supra, at p. 572.

11       This is where Respondent takes her cite from this case out of context.  First, the case was

12   specifically addressing domestic violence and physical abuse of the parent and child.

13   Therefore, in case of domestic violence abuse cases "Concern with comity among nations

14   argues for a narrow interpretation of the "grave risk of harm" defense; but the safety of

15   children is paramount. Jennifer presented at the summary judgment stage sufficient evidence

16   of a grave risk of harm to her children, and the adequacy of conditions that would protect the

17   children if they were returned to their father's country is sufficiently in doubt" supra, at p.

18   572.  Furthermore, the domestic violence itself was in dispute.  Petitioner's request for

19   summary judgment utilizes *Respondent's own verified statements*.  They're undisputed.

20       Respondent's citation of Cuellar v. Joyce is strongly supports *Petitioner's* request.

21   Similarly, in that case, the abducting parent was attempting utilize the "grave risk of harm"

22   exception with regard to medical and psychological issues of the child – claiming [as

23

24

Respondent does her] that they present a "grave risk of harm" to return the child to their

habitual residence of Panama.

In the *Cuellar* case, the child was alleged to suffer from "ataxia,"which is a lack of

coordination that may be symptomatic of a number of underlying neurological conditions."

Cuellar v. Joyce  596 F.3d 505, 510-511

The court clearly identified and saw through the true motive:  "So as not to impair the

Convention's general policy, this exception is "narrowly drawn," Asvesta v. Petroutsas, 580

F.3d 1000, 1020 (9th Cir.2009) (quoting In re Adan, 437 F.3d 381, 395 (3d Cir.2006)), and

all facts supporting the exception must be established by clear and convincing evidence. 42

U.S.C. § 11603(e)(2)(A). The exception "is not license for a court in the abducted-to country

to speculate on where the child would be happiest." Gaudin v. Remis, 415 F.3d 1028, 1035

(9th Cir.2005) (quoting Friedrich v. Friedrich, 78 F.3d 1060, 1068 (6th Cir.1996))."  It's

unsurprising that Richard thinks he'll get a better shake in the courts of his home country;

parents who abduct their children across international boundaries are generally driven by the

same hope. But the animating idea behind the Hague Convention is to eliminate "any tactical

advantages gained by absconding with a child." Holder v. Holder, 392 F.3d 1009, 1013 (9th

Cir.2004). The time to take such considerations into account is before undertaking the

volitional acts that lead to conception. Once the child is born, the remote parent must accept

the country where the child is habitually resident and its legal system as given. Absent a

showing of grave risk, or that one of the Convention's other narrowly-drawn exceptions

applies, whatever case the remote parent may have for custody must be made there."  Supra

at pp. 509- 510  In *Cuellar* the court found as Petitioner requests here – as a matter of law,

1    the claim of sub-standard medical care in the country of habitual residence does not rise to

2    "grave risk of harm" as required by clear and convincing evidence in Article 13(b).

3        "Even if the record did support a conclusion that K.C. exhibits ataxia, there's still no basis

4    to conclude that returning her to Panama would pose a grave risk of harm."  Supra at p. 511

5        The abducting parent then attempted, as Respondent does here – claim a psychological

6    harm as a "grave risk of harm".  The court wasn't convinced:  "Even if the record did support

7    a conclusion that K.C. exhibits ataxia, there's still no basis to conclude that returning her to

8    Panama would pose a grave risk of harm."  Supra at p. 511

9        The *Cuellar* court clearly and summarily stated exactly what Petitioner's request for

10   summary judgment promotes:  "There's nothing special about this case; it falls squarely

11   within the heartland of the Hague Convention. Richard has provided absolutely no evidence

12   that should have delayed K.C.'s return to her habitual residence in Panama. Indeed, the delay

13   in this case can only have exacerbated the harm caused by K.C.'s abduction. The Hague

14   Convention does not allow abducting parents to resort to courts in their home country in

15   order to thwart return of the child to its habitual residence. District courts considering Hague

16   Convention cases are cautioned not to allow abducting parents to manipulate judicial process

17   for purpose of delay, as Richard obviously has here.  We reverse the district court's

18   determination that K.C. would suffer a grave risk of harm if returned to Panama. Richard's

19   request for judicial notice is denied, as the materials contained therein are not relevant to the

20   disposition of this appeal." Supra at pp. 511-512

21       As in *Cuellar*, there is nothing special about this case.  Respondent abducted S.C. from

22   her country of habitual residence – Argentina.  As in *Cuellar*, the Respondent attempts to

23   utilize Article 13(b) as her exception to prevent the child's return – claiming a medical

24

condition that Argentina is not capable of treating [her genetic disorder] and psychological

harm that Argentina is not capable of addressing [*possible* borderline personality disorder].

To make a finding that Argentina is not advanced enough in medicine and education that

to return a child to their care would be a "grave risk of harm" – would be an egregious insult to

the country. Argentina is not a "third world country". They have a judicial system similar to the

United States. Their medical care has *not* been found to be sub-standard; let alone, incapable of

treating a child with a genetic order causing her factors upon the autism spectrum.

## DISMISSAL OF COUNTER PETITION

Respondent is correct that pursuant to Federal Rules of Civil Procedure, a Counter

Petition may be filed. However, Respondent has failed to present *any* law upon which the

allegations and "cause of action" are based upon. Respondent merely cites to the Hague

Convention Civil Aspects of International Child Abduction; which is expedient and summary

proceedings to ensure abducted children their *prompt return* to the State of their habitual

residence. March v. Levine 249 F.3d 462 (6th Cir. 2001).

In her Answer to Petition, Respondent has set forth her affirmative defense to *retain* the

minor child pursuant to Article 13(b). Her Counter Petition does not raise an *affirmative* claim

supported by law – it merely repeats *Petitioner's* relief under the Hague Convention Civil

Aspects of International Child Abduction. It's redundant and unsupported by law.

## CONCLUSION

Petitioner respectfully requests the Court to grant his Motion for Summary Judgment and

Dismiss Respondent's Counter Petition accordingly.

Dated:  11/30/2013                    Respectfully submitted,
                                      **LAW OFFICES OF B J FADEM & ASSOCIATES, APC**
                                      **/s/**
                                      By:  B J Fadem, Esq.