# The Noncustodial Parent and Medical Treatment

William Bernet, M.D.

Despite the frequency of divorce, there are no comprehensive guidelines for the relative rights of custodial and noncustodial parents. Since there are no definite rules for the parties to follow, divorced parents receive conflicting advice and are more likely to engage in bitter misunderstandings. This paper creates a framework for defining whether the noncustodial parent has a right to authorize emergency medical care, routine medical care, serious nonemergency medical care, psychiatric evaluation, and psychiatric treatment. The author suggests that the noncustodial parent should be able to authorize routine medical treatment, but not routine psychiatric treatment.

With the frequency of divorce being so high, more and more children are being raised in at least two households. The relationship between the divorced parents is often contentious and children suffer when they are victims of an ongoing dispute over both big and little issues. One issue that creates a great deal of misunderstanding and anger is defining the relative rights of the custodial and the noncustodial parents. There is disagreement regarding this issue among professionals who work with divorced parents. There is a big difference between the stated, for instance, the strict legal definition of the rights of noncustodial parents, and what happens in everyday practice.

This paper considers a particular issue, which is the right of the noncustodial parent to authorize medical evaluation and treatment. There is confusion and conflicting opinion about whether the noncustodial parent can take his or her child for medical evaluation, for routine medical treatment as opposed to emergency medical treatment, for psychiatric evaluation, and for psychiatric treatment. This paper will make specific recommendations as to how these issues should be handled. The intent of these recommendations is quite simple. That is, divorced parents are less likely to become angry and to fight with each other when there is less ambiguity in their relationship. If the rules of the game were more definite, each parent would have clearer expectations and

This paper was presented at the annual meeting of the American Academy of Psychiatry and the Law, October 19-22, 1989, in Washington, DC.
Dr. Bernet is Medical Director, Vanderbilt Child and Adolescent Psychiatric Hospital, Nashville, Tennessee, and Associate Clinical Professor, Department of Psychiatry, Vanderbilt University. Reprint requests to Dr. Bernet at 1601 Twenty-Third Avenue South, Nashville, TN 37212.

would be less likely to feel cheated and resentful when he or she doesn't get what he or she was hoping for.

In the remainder of this paper "she" will be used to refer to the custodial parent and "he" to the noncustodial parent. I am following that convention simply for clarity and for easy reading. There is no implication that the mother is more suited or more likely to be the custodial parent.

There is an extensive literature on how to do a psychiatric or psychological custody evaluation (Ash and Guyer,[1] Benedek and Benedek,[2] Gardner,[3,4] Goldzband,[5] Haller,[6] Herman,[7] Hodges,[8] Parry et al.,[9] Weiner et al.,[10] Weithorn,[11] American Psychiatric Association [12]). The literature on how to accomplish mediation of custody and visitation disputes (Bienenfeld,[13] Marlow and Sauber,[14] Ruman [15]) continues to grow. There has been a continuing discussion of the possible benefits of joint custody (Atwell et al.,[16] Folberg,[17] Milne [18]). What we lack are basic, generally accepted ground rules for the most common post-divorce situation, when one parent has custody of the child and the other one does not.

## Two Examples

These clinical vignettes illustrate how the right of the noncustodial parent to authorize treatment becomes an issue in medical and in psychiatric practice.

Andy, age 14, was visiting his noncustodial father for the weekend. After they watched "Saturday Night Live" together, Andy tripped on a rug, fell down, and cut his leg. The father took his son to the local emergency room late at night, where Andy's laceration was sutured. When Andy went home the next day, his mother learned of the injury and its treatment. It was basically a happy ending: the noncustodial father felt that he had been a good parent; Andy felt that he had a good dad; and the mother was relieved that she had not been called to the emergency room the night before. This kind of event is a commonplace occurrence, but it has a serious flaw. According to legal authorities, the noncustodial father did not have the right to authorize the treatment; the hospital did not have the right to accept Andy as a patient; and the physician who put in the sutures could be charged with assault and battery.

Bertha, age 12, had been living with her noncustodial father for two years. The mother had lost interest in Bertha, maintained very infrequent contact, moved to a distant state, and had allowed the father and stepmother to take over the parenting. However, the parents had simply not bothered to transfer legal custody from the mother to the father. When Bertha started junior high school she became extremely depressed and made a serious suicide attempt. Emergency hospitalization was recommended. At the time of her admission to the hospital the intake worker took the family history and discovered that the father did not actually have custody. The intake worker insisted on telephoning the mother in order to secure the custodial parent's permission for hospital treatment. The mother was outraged at this turn of events, got on a plane, and came to the hospital to take her daughter away. The hospital personnel

Case 2:13-cv-01175-JAM-EFB   Document 52-1   Filed 12/16/13   Page 3 of 8

The Noncustodial Parent and Medical Treatment

concluded, of course, that they had to abide by the demands of the custodial parent. Everybody in this situation played strictly by the book, but the results were tragic: Bertha was taken away from the only parents that really cared about her; the mother ended up with an unwanted burden; and the hospital staff felt stupid and helpless.

## Legal References

Existing state laws and the higher courts have provided few guideposts as to whether the noncustodial parent can authorize medical evaluation and treatment. A state law may simply indicate that the custodial parent has responsibility for the child and thereby suggest that the noncustodial parent has no more rights regarding the child than a total stranger. These laws could lead one to believe that the noncustodial parent may not take the child for medical treatment, unless there is a true emergency and the custodial parent cannot be located.

There are laws and case precedents that touch on different views of the relative rights of custodial and noncustodial parents. These related laws and cases may provide some guidance for what our policy should be regarding the authorization of medical evaluation and treatment.

State law may, in some instances, define specific rights for the noncustodial parent. Tennessee law, for instance, provides that the noncustodial parent has a right to a copy of the child's medical records[19] and to a copy of the child's report card.[20]

A few courts of record have defined specific rights for noncustodial parents. For instance, several courts have held that a noncustodial parent may not be precluded from taking a child to a particular church of his faith or to religious instruction in that faith.[21-23]

A court of appeals in Virginia[24] held that the noncustodial parent could provide whatever recreation he desired for the child, as long as it was not clearly dangerous. In that particular opinion, the court permitted the noncustodial parent to allow his 8-year-old child to ride a motorized dirt bike on the family farm, although the custodial parent disapproved.

An appellate court of Illinois[25] considered a case in which a noncustodial parent arranged for the child to be in outpatient psychotherapy, which continued every other month for a year. The court severely criticized the noncustodial parent and the psychiatrist for subjecting a young child to psychotherapy without the consent of the custodial parent or of the court.

The state of Washington has a law, the Parenting Act of 1987,[26] that provides a framework for the definition of the relative rights of both parents on a case-by-case basis. This law, which was derived from the Uniform Marriage and Divorce Act, requires parents and attorneys to think through these issues in detail prior to the divorce in order to establish clearly the rights and obligations of both parents. That is, each divorcing couple is required to submit a "permanent parenting plan" to the court when they file for divorce. The parents are required to define ahead of time the mutual decision-making authority of

both parents. The parenting plan must make provision for the decision-making authority with regard to education, health care, and religious upbringing. If used properly, the parenting plans would resolve the problem presented in this paper.

Attorneys give inconsistent advice regarding the rights of the noncustodial parent, because it depends on who the client is. Their inconsistencies are a natural consequence of dealing in an adversarial setting with an issue that has no firm guidelines. It seems that the attorney for the noncustodial father tells him that he should take whatever prerogatives he can get away with, especially if the particular issue had not been spelled out explicitly in the divorce agreement. The attorney for the custodial parent tells her that she may have the right to limit the father's access to the child's school, pediatrician, therapist, and so on. The attorney for the pediatrician may tell him that he should not see any child who is brought by a noncustodial parent, because there is some infinitesimal possibility that he might be sued for "perpetrating a battery."

## Medical References

Medical text books have rarely addressed the subject of treatment at the request of noncustodial parents—but the ones that do address the issue do not agree with the attorneys who restrict the noncustodial parent's right to authorize routine medical treatment. Holder [27] expressed the opinion that "as far as physicians are concerned, the parent who has possession of the child is in the same legal position as if custody had been awarded by a court." She gave an example of a noncustodial father who took an ill child for medical treatment: "the father may, of course, consent and the physician is not obligated to seek the consent of the mother."

Nye [28] also stated that a noncustodial parent may authorize a physician to provide ordinary medical care, which seemed to include almost all routine outpatient treatment. She said, however, that the custodial parent's consent is required for long-term therapy, surgery, hospitalization, and psychiatric treatment.

Physicians hear one thing from attorneys and something else from colleagues. Attorneys usually advise physicians to take whatever steps are necessary to guard against the remote possibility of some future law suit. Many attorneys would recommend that the doctor not treat a child without the permission of the custodial parent. However, that is not what happens in practice. It is common for family practitioners and for pediatricians to treat children at the request of noncustodial parents, stepparents, grandparents, and even baby sitters.

## Recommendations

It is usually in the child's best interests to feel that both his parents love him and provide for him and take responsibility for him. That means that the noncustodial parent should be fully responsible when the child is in his charge. It

should be possible to translate this basic principle into practical guidelines. These suggestions hopefully reflect a balance between the interests of the child (to have a loving relationship with both parents), the right of the custodial parent (to have ultimate responsibility for the child), and the right of the noncustodial parent (to have substantial but somewhat limited responsibility for the child). My assumption is that both parents have the right and responsibility to provide a safe, protective, nurturing environment.

Medical treatment occurs in a number of contexts. I will be making recommendations regarding the role of the noncustodial parent in authorizing emergency medical care, routine medical care, serious nonemergency medical care, psychiatric treatment, and psychiatric evaluation.

## Emergency Medical Care

One thing that attorneys, doctors, parents, and judges agree on is that noncustodial parents can take a child for emergency medical care. Of course, anybody at all can take a child for treatment of a true emergency.

## Routine Medical Care

The authorization of routine medical care is an area of confusion, which was illustrated by the case example of Andy. Laws generally state that the custodial parent is responsible for medical care; purists interpret these laws to mean that the noncustodial parent has no authority at all in this area; but the common medical practice is to treat children at the request of noncustodial parents. There is no consensus among parents, therapists, and attorneys on this issue.

The noncustodial parent should have complete responsibility for the child when he physically has the child with him. That means that the noncustodial parent should be encouraged to provide basic medical care at home when the illness is minor and to take the child to the pediatrician when the illness is more serious. The noncustodial parent should be able to authorize routine and reasonable tests, such as eye examinations, speech and hearing evaluations, x-rays, and laboratory tests. If the noncustodial parent is sending the child to camp for the summer, that parent should be able to arrange for the precamp physical examination and to authorize medical care at the camp.

Communication is essential, of course, and the noncustodial parent should let the custodial parent know what medical examinations and treatments have occurred during the visitation. It would also make sense for both the custodial and noncustodial parents to use the same pediatrician.

It is possible that the noncustodial parent would abuse his right to take the child for routine medical care. For instance, he might go doctor-shopping in the hopes of finding one who agrees with his own eccentric notions or he might run up medical bills that become the responsibility of the custodial parent. If the noncustodial parent abuses the privilege, it should be restricted. In most divorced families, however, children will experience better parenting and better

medical care if both parents can authorize routine medical care.

## Serious Nonemergency Medical Care

There is general agreement about the authorization of serious nonemergency medical care, i.e., that the custodial parent should have the authority to make major medical decisions, including hospitalization, surgery, and invasive procedures.

If, for instance, a noncustodial parent discovered during the summer that his teenage daughter had scoliosis, it would be appropriate for him to take her to an orthopedic surgeon for a consultation and x-rays (because that is routine medical care). However, it would be up to the custodial parent to authorize surgery (because that is serious nonemergency medical care).

## Psychotherapy

Psychotherapy is another kind of "serious nonemergency care," which can only be authorized by the custodial parent. A noncustodial parent might determine that his child has attention-deficit hyperactivity disorder, but it would be up to the custodial parent to decide whether to initiate a trial of medication. Absent an emergency, it is up to the custodial parent to authorize psychotherapy for the child. While the vast majority of mental health professionals would probably agree with this guideline, attorneys and custodial parents have occasionally reported that a noncustodial parent arranged for the child's therapy.

## Psychiatric and Psychological Evaluation

Most authorities say that the noncustodial parent should not be allowed to take a child for any kind of psychological or psychiatric evaluation, unless it is an emergency. There is not a consensus on this issue and I know psychiatrists and psychologists who sometimes evaluate children at the request of the noncustodial parent.

It is my recommendation that only the custodial parent or an appropriate court be allowed to authorize psychiatric or psychological evaluation, unless it is truly an emergency. The reason for taking this position is the possibility that the noncustodial parent is consulting the psychiatrist simply to collect evidence for a law suit to gain custody of the child. Many psychiatrists and psychologists consider it unethical to see the child in those circumstances because it only encourages the noncustodial parent to shop around and arrange repeated evaluations until he finds a therapist who says what he wants to hear.

Of course, this recommendation does not preclude the psychiatrist or psychologist from simply meeting with the noncustodial parent, without seeing the child. The noncustodial parent is usually hoping that a recommendation will be made to change the child's custody, to modify visitation, or to change the custodial parent's behavior in some way. The therapist can sit down with the noncustodial parent and educate him regarding the ramifications of what he is seeking and can give suggestions regarding specific issues or problems.

If the recommendations in this paper were followed, it would create a lack of symmetry, in that the noncustodial parent could take the child for routine medical evaluation but not for routine psychiatric evaluation. That seems to make sense when one considers what happens in everyday life: it almost always benefits the child for the noncustodial parent to take him or her to the doctor for routine medical care; but it may harm the child to be taken for repeated psychiatric evaluations when the noncustodial parent's agenda is to gain an advantage in court.

## The *de facto* Custodian

The issue in the second example, the case of Bertha, was that the legal custodian had been out of the picture for a very long time and the child was actually being raised by the noncustodial parent. In such a situation the noncustodial parent should be allowed to make any and all decisions regarding the child. In the example of Bertha, the hospital could have gone ahead and admitted her on the authority of the noncustodial parent. If the staff wanted to make it more official, the hospital could have admitted the girl and also asked the noncustodial parent to go to court for an order authorizing the inpatient treatment. Once that was in place, the hospital staff could call the mother and let her know about the admission and perhaps involve her in the treatment.

## Common Sense

In the case of Andy, I would say that it made sense for the emergency room physician to suture the laceration and not worry about calling the custodial parent to obtain permission for this routine nonemergency procedure. In the case of Bertha, it would have made sense for the intake worker to go ahead and admit the depressed girl on the authority of the noncustodial parent, who was the child's true caretaker.

## The Role of the Mental Health Professional

There are several things mental health professionals can do to promote more clarity regarding these issues.

1. Mental health professionals who conduct custody evaluations and who provide mediation for divorced parents can recommend that the parents make explicit the relative rights of both parents, especially regarding the authorization of medical care. It is preferable if the parents themselves determine what the rules and policies are going to be for their divorced family, rather than leaving it up to the court or some other external agency.

2. Therapists can continue to point out that the rights of both the parents should usually be subordinated to the interests of the child.

3. Therapists should emphasize that the parents should communicate clearly and directly to each other about medical treatments. Otherwise the child might be treated by two pediatricians with two different antibiotics for the same infection.

4. Psychiatrists, psychologists, and other professional groups can be consistent among themselves by declining to provide an evaluation or treatment unless the parent who brings the child clearly has the right to authorize it.

5. In their own states mental health professionals can support the adoption of some features of the Uniform Marriage and Divorce Act, which require that a comprehensive parenting plan be in place at the time of the divorce.

### References

1. Ash P, Guyer MJ: The functions of psychiatric evaluation in contested child custody and visitation cases. J Am Acad Child Psychiatry 25:554–61, 1986
2. Benedek RS, Benedek EP: Participating in child custody cases, in Child Psychiatry and the Law. Edited by Schetky DH, Benedek EP. New York, Brunner/Mazel, 1980
3. Gardner RA: Family Evaluation in Child Custody Litigation. Cresskill, NJ, Creative Therapeutics, 1982
4. Gardner RA: Psychotherapy with Children of Divorce. Northvale, NJ, Jason Aronson, Inc., 1991
5. Goldzband MG: Custody Cases and Expert Witnesses: A Manual for Attorneys. Clifton, NJ, Prentice Hall, 1988
6. Haller LH: Before the judge: the child-custody evaluation. Adolesc Psychiatry 1981; 9:142–164
7. Herman S: Child custody evaluations, in Clinical Handbook of Child Psychiatry and the Law. Edited by Schetky DH, Benedek EP. Baltimore, Williams and Wilkins, 1991
8. Hodges WF: Interventions for Children of Divorce. New York, John Wiley & Sons, 1986
9. Parry RS, Broder EA, Schmitt EAG, Saunders EB, Hood E: Custody Disputes. Lexington, MA, D. C. Heath, 1986
10. Weiner BA, Simons VA, Cavanaugh JL: The child custody dispute, in Emerging Issues in Child Psychiatry and the Law. Edited by Schetky DH, Benedek EP. New York, Brunner/Mazel, 1985
11. Weithorn LA: Psychology and Child Custody Determinations. Lincoln, University of Nebraska Press, 1987
12. American Psychiatric Association: Child Custody Consultation: A Report of the Task Force on Clinical Assessment in Child Custody. Washington, DC, APA, 1982
13. Bienenfeld F: Child Custody Mediation: Techniques for Counselors, Attorneys and Parents. Palo Alto, CA, Science and Behavior Books, 1983
14. Marlow S, Sauber SR: The Handbook of Divorce Mediation. New York, Plenum Press, 1990
15. Ruman M: Mediation: its implications for children and divorce, in Emerging Issues in Child Psychiatry and the Law. Edited by Schetky DH, Benedek EP. New York, Brunner/Mazel, 1985
16. Atwell AE, Moore US, Nielsen E, Levite Z: Effects of joint custody on children. Bull Am Acad Psychiatry Law 12:149–57, 1984
17. Folberg J (ed): Joint Custody and Shared Parenting. Washington, DC, Bureau of National Affairs, 1984
18. Milne A (ed): Joint Custody: A Handbook for Judges, Lawyers and Counselors. Ft. Lauderdale, Fla., Association of Family Conciliation Courts, 1979
19. Tenn Code Ann, 36-6-103 § (1991)
20. Tenn Code Ann, 36-6-104 § (1991)
21. Cissell v. Cissell, 573 SW2d 722, (Mo Ct. App. 1978)
22. Munoz v. Munoz, 489 P2d 1133, (Wash. 1971)
23. Robertson v. Robertson, 575 P2d 1092, (Wash. Ct. App. 1978)
24. Eichelberger v. Eichelberger, 345 SE2d 10 (Va. Ct. App. 1986)
25. Dymek v. Nyquist, 469 NE2d 659, (Ill. App. Ct. 1984)
26. Wash. Rev. Code Ann. § 26.09 (West Supp. 1993)
27. Holder AR: Legal Issues in Pediatrics and Adolescent Medicine. New Haven, CT, Yale University Press, 1985, p 126
28. Nye SG: Legal issues in the practice of child psychiatry, in Child Psychiatry and the Law. Edited by Schetky EH, Benedek EP. New York, Brunner/Mazel, 1980, p 272