B J Fadem Esq.   SBN: 118819*
*Certified Family Law Specialist - State Board of Specialization
Ron B. Nerio, Esq, SBN: 251228
Magdalena A. LaBranch, Esq.  SBN: 262783
Corrine Gaxiola, Esq.   SBN: 270060
LAW OFFICES OF B J FADEM & ASSOCIATES, APC
111 N. Market Street, Suite 910
San Jose, CA 95113
Telephone: 408-280-1220
Fax: 408-971-9940
bjfadem@fademlaw.com
Attorneys For Petitioner
DANIEL CARLOS CHIRAMBERRO LARRATEGUI

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CARLOS CHIRAMBERRO LARRATEGUI,<br>    Petitioner,<br><br>vs.<br><br>VALERIA EGUIGUREN LABORDE,<br>    Respondent. | Case No.: 2:13-cv-01175-JAM-EFB<br><br>PETITIONER'S MEMORANDUM OF POINTS & AUTHORITIES OPPOSITION TO RESPONDENT'S MOTION FOR NEW TRIAL / RECONSIDERATION<br><br>Trial Dates:  12/02 – 12/05/2013<br>Courtroom:   6<br>Judge:       Hon. John A. Mendez |

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 1

TABLE OF CONTENTS

I. SUMMARY ............................................................................................................ 4

II. FACTS ................................................................................................................. 5

III. ARGUMENT ...................................................................................................... 5

   A.   RESPONDENT'S REQUEST FOR NEW TRIAL: RULE 59(A)(1)(B) ...... 5

   B.   MOTION FOR RECONSIDERATION: RULE 59(E) .................................. 6

   C.   NEWLY DISCOVERED EVIDENCE ........................................................ 6

   D.   MANIFEST ERROR BY THE COURT ...................................................... 11

III. CONCLUSION ................................................................................................. 14

TABLE OF AUTHORITIES

Statues and Treaties                                                                                   Pages

Hague Convention on the Civil Aspects of International Child Abduction

and the International Child Abduction Remedies Act ............................................ 3

Article 19 of the Hague Convention on the Civil Aspects of

International Child Abduction ................................................................................ 7

Public Notice 957, 51 Fed.Reg. 10494, 10510 (March 26, 1986) ................. 10,13


Cases                                                                                                 Pages

Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011) .......................... 5

Avendano v. Smith, 806 F. Supp. 2d 1149, 1168 (D.N.M., 2011) ........................ 9

Corretjer Farinacci v. Picayo, 149 F.R.D. 435, 437 (D.P.R. 1993) ..................... 5

Cueller v. Joyce [596 F.3d 505, (9th Cir. 2010) ............................................. 6,7,13

Farm Credit Bank of Texas v. Guidry, 110 F.3d 1147, 1154 (5th Cir. 1997) ....... 5

| | | |
|---|---|---|
| 1 | Giampaolo v. Erneta, 390 F.Supp.2d 1269 (N.D. Ga., 2004) | 7 |
| 3 | Cases | Pages |
| 4 | In re Marriage of Forrest and Eaddy (2006) 144 Cal.App.4th 1202 | 8 |
| 5 | March v. Levine, 249 F.3d 462 | 8 |
| 6 | Morgan v. Labiak, 368 F.2d 338, 341 (10th Cir. 1966) | 5 |
| 7 | Norman v. Arkansas Department of Education, 79 F.3d 748, 750 (8th Cir. 1996) | 5 |
| 8 | Núñez-Escudero v. Tice-Menly, 58 F.3d 374,377 (8th Cir. 1995) | 7 |
| 9 | Pennsylvania Ins. Guar. Ass'n v. Trabosh, 812 F. Supp. 522, 524 (E.D. Pa. 1992) | 5 |
| 10 | Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997) | 5 |
| 11 | Snellman v. Ricoh Co., 836 F.2d 528, 532 (Fed. Cir. 1987) | 4 |
| 12 | Tahan v. Duquette, 259 N.J.Super. 328, 336 613 A.2d 486 (N.J. Super. A.D., 1992) | 12 |
| 13 | Tsai-Yi Yang v. Fu-Chiang Tsui, 499 F.3d 259, 279 (3rd Cir., 2007) | 11 |
| 14 | Wendy's Int'l, Inc. v. Nu-Cape Constr.,Inc., 169 F.R.D. 680, 685 (M.D. Fla. 1996) | 5 |

# I. SUMMARY

Petitioner was granted full custody of the parties' minor child, S.C. by the Argentina Courts in 2010. In November 2012, by stipulation and order, Respondent was granted visitation with the S.C. in the United States from December 13, 2012 until January 29, 2013. Respondent wrongfully retained S.C. in the United States resulting in the District Attorney for the County of San Joaquin filing a Petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act [hereinafter referred to as "ICARA"] in the Superior Court of the County of San Joaquin. Respondent removed the matter to the federal jurisdiction and this Court proceeded with an evidentiary trial from December 2, 2013 through December 5, 2013.

The Court issued its Statement of Facts and Conclusions of Law, along with "Undertakings" granting the Petition for Return on January 10, 2014. Pursuant to the Court's Order, Petitioner submitted a declaration of himself, a declaration of his local Argentina counsel and a letter from Ricardo Arredondo [diplomat for the Argentina Consulate – an attorney licensed to practice in California and Argentina].

The Court issued the Return Order on February 7, 2014; the child was to be brought to this Court on February 14, 2014 at 1:30 pm wherein Petitioner would return home to Argentina with her.

On February 7 and 9, 2014, Respondent filed her post- trial motions: Emergency Motion and Request for Order Shortening Time, Emergency Motion for Stay or Vacate of Order, Motion to Amend Judgment, Motion for New Trial, and Objections to the Court's Undertakings. The Court has set these motions to be heard 2/14/2014 at 1:30 pm.

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 4

1  Evidently, Respondent has already ordered the trial transcripts in that counsel is citing
2  from such. Unfortunately, Petitioner is at a disadvantage in that first notice of the motions were
3  Monday morning [having been filed late Friday and Sunday] with oppositions due Wednesday.

## II. FACTS

It has never been disputed that the habitual residence of the child is Argentina. It also was not disputed that Respondent wrongfully retained the child in the United States in violation of the Argentina orders that she was to be returned on or before January 29, 2013.

Initially, Respondent claimed three (3) defenses to the Petition for Return: (1) Article 13(b) – Grave risk of Harm; (2) Article 13 – the child is mature enough and refuses to return; and (3) Article 20 – That Argentina would fail to protect the fundamental principles of human rights and freedom. At trial, the first and third defenses were abandoned and the Court was asked to consider only Article 13(b).

## III. ARGUMENT

It is difficult to decipher exactly what relief Respondent is requesting from the Court. However, it appears that she is requesting a New Trial pursuant to Rule 59(a)(1)(B), Motion for Reconsideration, and/or Motion to Amend the Judgment pursuant to Rule 59(e).

A. RESPONDENT'S REQUEST FOR NEW TRIAL: RULE 59(a)(1)(B)

A Motion for New Trial must state with particularity the grounds for making the motion and set forth the relief or order sought. **[Rule 7(b)(1)]** Therefore, if the particularity requirement is not satisfied, the court must deny the motion. **[Snellman v. Ricoh Co., 836 F.2d 528, 532 (Fed. Cir. 1987)]**

It is true that there are three (3) grounds in which the Court may grant a Motion for New Trial pursuant to Rule 59(a)(1)(B): (1) manifest error of law; (2) manifest error of fact;

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 5

1  and/or (3) newly discovered evidence. It is clear that Respondent seeks a new trial based upon
2  alleged "newly discovered evidence"; however, her blatant statement that this Court "erred" in
3  refusing to allow the child to testify is ambiguous as to whether Respondent is alleging a mistake
4  of *fact* or a mistake of *law*.

5       B.    MOTION FOR RECONSIDERATION: RULE 59(e)

6       The Supreme Court has identified a test to determine whether a motion is or is not a Rule
7  59(e) motion: A Rule 59(e) motion involves the reconsideration of matters properly
8  encompassed in a decision on the merits. **[Corretjer Farinacci v. Picayo, 149 F.R.D. 435, 437**
9  **(D.P.R. 1993); Norman v. Arkansas Department of Education, 79 F.3d 748, 750 (8th Cir.**
10 **1996); Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997)]**

11      Although the Courts have considerable discretion whether to grant or deny a Motion for
12 Reconsideration pursuant to Rule 59(e), this discretion is not limitless. The reconsideration of a
13 Court's order or judgment is an extraordinary remedy, to be used sparingly in the interests of
14 finality and conservation of judicial resources. **[Wendy's Int'l, Inc. v. Nu-Cape Constr.,Inc.,**
15 **169 F.R.D. 680, 685 (M.D. Fla. 1996); Pennsylvania Ins. Guar. Ass'n v. Trabosh, 812 F.**
16 **Supp. 522, 524 (E.D. Pa. 1992)]**

17      The Courts may grant such a motion on any of four (4) grounds: (1) To take account of
18 an intervening change in controlling law; (2) To take account of newly discovered evidence;
19 (3) To correct clear legal error; or (4) To prevent manifest injustice. **[Allstate Ins. Co. v.**
20 **Herron, 634 F.3d 1101, 1111 (9th Cir. 2011)]**

21      C.    NEWLY DISCOVERED EVIDENCE

22      A three-part analysis applies to Motions for New Trials based upon "newly discovered
23 evidence: (1) The newly discovered evidence must have been discovered after judgment and the
24

Larrategui vs. Laborde  
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial  
Page 6

1 movant must have been excusably ignorant of the facts at the time of the trial despite due

2 diligence to learn about the facts of the case; (2) The evidence discovered must be of a nature

3 that would probably change the outcome of the case; and (3) The evidence must not be merely

4 cumulative or impeaching. [**Farm Credit Bank of Texas v. Guidry**, 110 F.3d 1147, 1154 (5th

5 Cir. 1997); **Morgan v. Labiak**, 368 F.2d 338, 341 (10th Cir. 1966)]

6     Respondent alleges that the "newly discovered evidence" is that Petitioner unilaterally

7 cancelled S.C.'s therapy with Ana De Trinidad.

8     First, it's absolutely not true. **[See, Declaration of Petitioner and Exhibit 1 attached**

9 **thereto]**. It's interesting that Respondent chose not to include the email from Petitioner to Ms.

10 De Trinidad; it clearly shows the *opposite*. As indicated in Petitioner's declaration and his

11 email, pursuant to the directions from S.C.'s Argentina pediatric neurologist, he was introducing

12 himself to Ms. De Trinidad in order to coordinate the future treatment of S.C. *and* to ensure there

13 wasn't an interruption in treatment. What is evident from Ms. De Trinidad's letters is that she

14 was completely unaware that Petitioner existed in S.C.'s life and, as was stated in Petitioner's

15 Post Trial Brief, required to obtain consent of the custodial parent. She felt uncomfortable in that

16 Respondent obviously misled her in obtaining S.C.'s treatment – as she evidently did with Dr.

17 Crawford and Dr. Bernal. Petitioner clearly NEVER demanded any treatment to cease and asked

18 Ms. De Trinidad what other documentation she needed from him. Petitioner has not acted

19 inappropriately in any manner nor has he attempted to interfere with S.C.'s treatment.

20     This is further ironic in that, as indicated in Petitioner's Declaration and Exhibits in re

21 satisfaction of the Court's Undertakings, it was, in fact, Respondent who unilaterally and without

22 Petitioner's knowledge or consent, canceled all of S.C.'s medical care in Argentina when she

23 decided to wrongfully retain her in California.

24

Larrategui vs. Laborde  
2:13-cv-01175-JAM-EFB  

Petitioner's Opposition to Motion for New Trial  
Page 7

1   Not only is Respondent's argument inaccurate, but it is not legally sound.  First, whatever
2   Petitioner allegedly "told" Ana De Trinidad as reported by Respondent in her declaration is
3   double hearsay and admissible.  More important, Respondent attempts to make law for the Ninth
4   Circuit Court:  the Court in *Cueller v. Joyce* [596 F.3d 505, (9th Cir. 2010) specifically stated that
5   although, Respondent failed to make a clear and convincing finding that Panama could not
6   provide the medical care necessary for the Child, "A parent may be able to defeat or delay return
7   by showing that it would disrupt an ongoing course of medical treatment and severely impact the
8   child's health. But the parent would have to provide clear and convincing evidence both of the
9   child's serious medical needs and of the home country's inability to provide the necessary care.
10  That evidence was entirely lacking here." **[Cueller v. Joyce, supra at p. 512]** Respondent takes
11  a huge leap and tries to make law that, if the *Cueller* court *had* found a medical need, then the
12  law would require a showing that not only the habitual country was unable to provide the
13  necessary care *but that the "parent" wasn't capable*.  The Court clearly did not intend to make
14  such a finding.  To do so would be in violation of the very basic purpose of ICARA and cross
15  over into a determining custody and which party is a better parent – which is specifically
16  prohibited. **[Article 19 of the Hague Convention on the Civil Aspects of International Child**
17  **Abduction;  Giampaolo v. Erneta, 390 F.Supp.2d 1269 (N.D. Ga., 2004);  Núñez-Escudero v.**
18  **Tice-Menly, 58 F.3d 374,377 (8th Cir. 1995)]**
19   Once again, Respondent is asking this Court to make custody orders – to determine who
20  is the better parent. The Court in *Cueller* was well aware that to make such a legal "leap"
21  regarding the capability of the *parent* would be clear breach of the Hague Treaty.
22   Respondent *still* cannot provide clear and convincing evidence that Argentina cannot or
23  will not provide the necessary care for S.C.'s needs.  Argentina is not a third world country.  In
24

Larrategui vs. Laborde  
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial  
Page 8

1   many ways, the evidence at the trial clearly indicated that she received more care specific to her
2   needs in Argentina [e.g. a private school devoted to special needs with an integrated teacher, a
3   team of medical providers who provided speech therapy, psychotherapy [twice a week], music
4   therapy, *and* met and worked with her school to coordinate her treatment]. As opposed to
5   California, wherein she obtained a test with technology not available in Argentina – yet – upon
6   review of the results, Dr. Amartino confirmed that it merely corroborated his initial diagnosis
7   and his course of treatment. However, absent the technology: S.C. was enrolled in public school
8   [Respondent's witnesses admitted that the school removed S.C. from their "special needs"
9   program because it couldn't provide her the services she needed, that she was in only remedial
10  math, that she was in a class for English as a second language, and they had no idea what an
11  "integrated teacher" was]; she was not receiving private therapy until months after she was
12  wrongfully retained in the United States, and even then, only twice a month, no speech therapy,
13  no music therapy, and her "school counselor" had absolutely no education or background in
14  psychology or child development; holding a B.A. in Administration of Justice.

15       The court in *March* further supports *Cueller* in stating "…Second, there is a grave risk of
16  harm in cases of serious abuse or neglect, or extraordinary emotional dependence, when the
17  *court in the country of habitual residence*, [emphasis added] for whatever reason, may be
18  incapable or unwilling to give the child adequate protection. **[March v. Levine, 249 F.3d 462]**
19  The Court specifically stated the *country* was incapable or unwilling. Further evidence that the
20  *Cueller* court deliberately narrowed their finding to the capability of the *country* is found in *In Re*
21  *Marriage of Forrest and Eaddy*: "Courts must make a finding that (1) the courts of the country
22  of habitual residence was incapable of or unwilling to adequately protect the child; and (2) there
23  are no alternative remedies that could be implemented to avoid or minimize the risk of harm, if
24

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 9

any, that would otherwise exist. **[In re Marriage of Forrest and Eaddy (2006) 144 Cal.App.4th 1202]** Again, the court deliberately addressed the *"courts of the habitual residence"* – not the parent.

The Article 13(b) defense "do[es] not authorize a court to exceed its Hague Convention function by making determinations, such as who is the better parent, that remain within the purview of the court with plenary jurisdiction over the question of custody. To view the defenses more broadly would frustrate the core purpose of the Hague Convention - to preserve the status quo and deter parents from seeking custody of their child through, in effect, forum shopping. See Perez-Vera Report, supra, ¶ 34." **[Avendano v. Smith, 806 F. Supp. 2d 1149, 1168 (D.N.M., 2011)]**

Yet again, Respondent is requesting that this Court make a determination as to what is in the child's best interest and focus upon the parties as parents. As this Court properly indicated in its Order of January 10, 2014, the law prohibits such a review under the Hague Treaty.

These parties have been litigating the custody and visitation issues in Argentina for over six (6) years. They have had the same judge preside over their case for the entire time. The presiding judge in Argentina is in a much better position to determine custody issues and the best interests of the child; especially where the necessary witnesses [i.e. S.C.'s teachers, school administration, caregivers, family and medical providers] are all available to testify and answer any questions from the court. This is the very reason that the Hague prohibits any such consideration – it is merely to determine *as expediently as possible* what country has jurisdiction to make such decisions and return that child so that the proper jurisdiction may then make those determinations.

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 10

Respondent continues to "forum" shop. She litigated her issues before the Argentina Court for six (6) years. When she did not obtain the results *she wanted*, she decided to ignore the Court's orders and act on her own – knowingly and wrongfully retaining S.C. in the United States. She then asked this Court to re-determine custody, under the guise of Article 13(b). However, the basis for her "grave risk of harm" is essentially: (1) the United States schools are superior to those of Argentina; (2) the medical care in the United States is superior to that available in Argentina; and Petitioner is incapable of caring for S.C.

Respondent's arguments regarding Petitioner's economic status, the schooling and educational opportunities for the child, and the medical technology must fail as a matter of law. A review of deliberations on the Convention reveals that "intolerable situation" was not intended to encompass return to a home where money is in short supply, or where educational or other opportunities are more limited than in the requested State...." **[Public Notice 957, 51 Fed.Reg. 10494, 10510 (March 26, 1986)].** The final argument is clearly a custody issue to be determined by the Court in Argentina.

The alleged "dramatic post-trial development" never happened. Regardless, it does not alter, as a matter of law, the Court's findings and order of January 10, 2014.

D.   MANIFEST ERROR BY THE COURT

Petitioner cannot determine whether Respondent is alleging that this Court made a manifest error of fact or a manifest error of law by refusing to allow the child to testify.

There is absolutely no law that *mandates* a court in a Hague proceeding to interview or allow the child to testify pursuant to an Article 13 defense. In this case, Respondent makes a contradictory argument: S.C.'s special medical needs for the purposes of her claim under Article 13(b) includes a diagnosis that manifests a severe lack of maturity of the child. Their

own expert, Dr. Crawford, opined that S.C. had the emotional maturity of an eight (8) or nine (9) year old. Yet, in making her alternate argument under Article 13, she wants this Court to find the child mature enough to testify as to her refusal to return to Argentina. Respondent inherently contradicts herself within her own argument.

Regardless, almost *all* of *Respondent's* witnesses confirmed that S.C. was torn and missed her father and Argentina. There was absolutely no evidence produced to indicate that the child did not wish to return to Argentina. Dr. Crawford testified that S.C. admitted to her that she missed her home, her father, her dog and her family and friends. She also indicated that S.C. would shut down and not wish to discuss it at length. S.C.'s school counselor confirmed that S.C. told her how much she missed her home, her father, her dog and her family.

"An analysis of whether to apply the "wishes of the child" exception requires consideration of the goals of the Convention and a determination of whether the child is of sufficient age and maturity for his or her views to be taken into account. Id. The Convention does not set an age at which a child is automatically considered to be sufficiently mature, rather the determination is to be made on a case-by-case basis. "Given the fact-intensive and idiosyncratic nature of the inquiry, decisions applying the age and maturity exception are understandably disparate." Id. at 1287 (internal citation omitted). In making its determination, a court should also consider whether a child's desire to remain or return to a place is "the product of undue influence," in which case the "child's wishes" should not be considered. Id. at 1286; see also Hague Convention Analysis, 51 Fed.Reg. at 10,509 ("A child's objection to being returned may be accorded little if any weight if the court believes that the child's preference is the product of the abductor parent's undue influence over the child.")." **[Tsai-Yi Yang v. Fu-Chiang Tsui, 499 F.3d 259, 279 (3rd Cir., 2007)]** The Court found that the child "…was not of sufficient age or

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 12

maturity for her views to be appropriately considered. In other words, it found that [the Respondent] failed to meet his burden of proving by a preponderance of the evidence that the "wishes of the child" exception should be applied in this case. Therefore, the District Court declined to apply the exception to prevent [the child] from being returned to Canada based solely on her desire to remain in Pittsburgh." **[Tsai-Yi Yang v. Fu-Chiang Tsui, supra at p. 280]**

It is fully within the discretion of the Court to determine whether or not to interview the child. Therefore, even *if* Respondent chose not to abandon her Article 13 affirmative defense, this Court was not obligated to interview the child nor, even if interviewed, to take the child's preference or objection into consideration. "The failure of the trial judge to interview the child was not plain error. R. 2:10-2. To the contrary, an interview with the judge, under the circumstances before the court, could not have served a useful purpose. Article 13 of the Convention excuses the duty to return if a child of appropriate age and maturity objects. This standard simply does not apply to a nine-year old child. " **[Tahan v. Duquette, 259 N.J.Super. 328, 336 613 A.2d 486 (N.J. Super. A.D., 1992)]** Oddly similar in this case, although chronologically older, all parties and witnesses agreed that S.C.'s emotional and maturity level was approximately at the age of nine (9).

Therefore, Respondent's request for a New Trial or Reconsideration fails in that this Court did not err in law or fact when exercising its discretion *not* to interview S.C. with respect to Respondent's Article 13 affirmative defense.

E.   MISCELLANEOUS

Respondent also argues that she cannot return to Argentina to litigate the custody issues because of the fines and sanctions levied against her by the Court in Argentina. Petitioner already testified that he waived all support arrears she owed him. However, she chose to violate

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 13

the Argentina court orders – numerous times; despite her having full legal representation in Argentina. There is absolutely no legal grounds under ICARA that she should be able to continue to wrongfully retain the child in the United States because of her own contempt of court orders in the country of the child's habitual residence. Petitioner has not engaged in any malevolent conduct in Argentina against Respondent.

Respondent's argument that Petitioner cannot possibly afford S.C.'s medical care in Argentina [albeit false] must also fail as a matter of fact and law. It's interesting that Respondent makes such an argument in light of the fact that in her own declaration, she admits that she has been unable to afford her share of the child's expenses over the years and that her parents pay one half of her share. Regardless, the law is clear that economy may *not* be a consideration under Article 13(b). **[Public Notice 957, 51 Fed.Reg. 10494, 10510 (March 26, 1986)]**

### III. CONCLUSION

Respondent's various motions are vague and ambiguous in that they appear to consolidate several requests in various unsupported vehicles. It further fails in setting forth the necessary particularities required in such a motion. Petitioner has attempted to organize Respondent's arguments by segregating the actual motions, oppositions thereto and declarations in support. However, Respondent's basic argument throughout is her continued argument that she is the better parent and that the Court erred in refusing to consider S.C.'s alleged refusal to return to Argentina. The "newly discovered evidence" is erroneous. Regardless, Respondent's attempt to make new law or speculate as to the Court's thoughts in *Cueller* must fail as a matter of law.

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 14

The District Attorney of the County of San Joaquin could have easily chosen to "register" the Argentina custody orders as opposed to pursuing a Petitioner for Return under the Hague. Had they chosen the former procedure, S.C. would have been returned to Argentina a year ago. However, we are now at the juncture of the Court's final determination after a long and detailed trial pursuant to the Hague Treaty.

Respondent wanted a "second bite at the apple" when she proceeded to treat the Hague proceedings before this Court as a custody hearing. She now seeks her "third bite at the apple". It is clear that Respondent will continue to forum shop as long as she does not obtain the exact results she wants. However, to delay S.C.'s return home would cause further irreparable injury to the child and controvert the very purpose of ICARA. This Court gave Respondent extreme leniency and a wide berth in presenting her evidence during the course of this trial; evidence that often clearly argued "best interest" and addressed custody issues. Respondent was not excluded from presenting any of her evidence and, this Court even accepted her expert's opinions as fact. Despite this, the Court found as a matter of law pursuant to the Hague that the child *must* be returned to Argentina.

Even if Respondent was given another opportunity at a new trial, it would only further drain the parties' financial resources, delay the proceedings [which Respondent has clearly set out to do from initial outset] and further congest this Court. She would present the alleged evidence that Petitioner terminated S.C.'s therapy and demand that the Court interview the child. Petitioner has already provided this Court with the evidence that he did not terminate any of S.C.'s treatment in the United States, and, regardless, such an argument nevertheless fails to support a refusal to return the child under Article 13(b).

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 15

1  This Court has full discretion to decline to interview the child. Even if the Court did

2  interview the child, it is not obliged to assert the child's preference. In this case, to interview the

3  child would negate Respondent's argument that she would be exposed to a "grave risk of harm"

4  since here severe medical condition is predicated upon the symptomology that she has the

5  emotional and psychological maturity level of an eight (8) or (9) year old. If she was mature

6  enough for her objection to be considered, then her medical condition is not so grave as to

7  require the extensive medical and educational care that Respondent has predicated her entire

8  Article 13(b) defense upon.

9  Finally, Respondent now proffers affidavits from two (2) international law professors to

10  state that both Mr. Ricardo Arredondo and Mr. Ramon Vasquez are lying. Mr. Arredondo is a

11  diplomat for the Argentina Consulate in Los Angeles, California. He testified that he is licensed

12  to practice in both California and Argentina. Mr. Arredondo has absolutely no reason to "lie"

13  about the Argentina judicial system. Furthermore, Respondent had every opportunity to present

14  legal experts during the trial and chose not to. She now presents professors who are not currently

15  practicing family law in Argentina. Ramon Vasquez, although admittedly Petitioner's Argentina

16  attorney, is still an officer of the Argentina Court and takes his oath under penalty of perjury very

17  seriously.

18  //

19  //

20  //

21  //

22  //

23  //

24

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 16

Respondent has failed to present any basis for a new trial or reconsideration by this Court of its order. Accordingly, Petitioner respectfully requests that her Motion for New Trial / Reconsideration be denied and ergo deny any stay or vacating of its February 7, 2014 Order that the child is to be immediately returned to Argentina.

Dated: 2/12/2014    By: /s/ BJ Fadem
Law Offices of BJ Fadem & Associates, APC
111 North Market Street, Suite 910
San Jose, CA 95117
Telephone: (408) 280-1220
Fax: (408) 971-9940
E-mail: BJfadem@fademlaw.com
Attorney for Petitioner

**Certificate of Service**

I certify that on February 12, 2014, I caused the document entitled Petitioner's Memorandum Of Points & Authorities Opposition To Respondent's Motion For New Trial / Reconsideration to be filed electronically with the Clerk of the Court through it's ECF system, and the ECF system will send an e-notice of electronically with the Clerk of the Court through its ECF system, and the ECF system will send an e-notice of electronic filing to the following:

Allison W. Maxim
Maxim Law, PLLC
Ramsey Professional Building
311 Ramsey Stree., Suite 201
Saint Paul, Minnesota 55102
Allison@maxim-law.com

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Petitioner's Opposition to Motion for New Trial
Page 18