B J Fadem Esq.    SBN: 118819*
*Certified Family Law Specialist - State Board of Specialization
Ron B. Nerio, Esq, SBN: 251228
Magdalena A. LaBranch, Esq. SBN: 262783
Corrine Gaxiola, Esq.  SBN: 270060
LAW OFFICES OF B J FADEM & ASSOCIATES, APC
111 N. Market Street, Suite 910
San Jose, CA  95113
Telephone: 408-280-1220
Fax: 408-971-9940
bjfadem@fademlaw.com
Attorneys For Petitioner
DANIEL CARLOS CHIRAMBERRO LARRATEGUI

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CARLOS CHIRAMBERRO LARRATEGUI,<br>Petitioner,<br><br>vs.<br><br>VALERIA EGUIGUREN LABORDE,<br>Respondent. | Case No.: 2:13-cv-01175-JAM-EFB<br><br>DECLARATION OF PETITIONER IN OPPOSITION TO RESPONDENT'S OBJECTIONS TO UNDERTAKINGS<br><br>Courtroom: 6<br>Judge:    Hon. John A. Mendez |

I, DANIEL CARLOS CHIRAMBERRO LARRATEGUI, do declare:

1. Respondent is misleading this Court with regard to Ms. De Trinidad. I never cancelled any treatment of S.C. To the contrary, upon the direction of S.C.'s neurologist, Dr. Amartino, I contacted Ms. De Trinidad to coordinate her treatment from the United States to Argentina to ensure that there *wasn't* an interruption in S.C.'s treatment. Interestingly enough, Respondent failed to include the actual email I sent to Ms. De Trinidad despite Respondent receiving a copy. Attached hereto as Exhibit 1 is a true and genuine copy of that email – I was introducing myself to Ms. De Trinidad and advising her that I *did*

consent to the treatment and to let me know what she needed. It's ironic that Respondent is so upset and alleging I terminated S.C.'s therapy when it was *she* that, without any thought to the effect on S.C., withheld her in the United States, interrupting her treatment *and canceling her medical care entirely in Argentina*! At the time of trial, she hadn't even begun regular therapy sessions for S.C.; relying upon the school counselor who testified that she had no background in psychology, merely a B.A. in Administration of Justice.

2. Respondent is also misleading the Court in that immediately after the last day of trial, we sat and talked personally for almost an hour by ourselves discussing S.C.'s future and various possibilities regarding visits. Respondent wouldn't even send me the proper emails and contact information of S.C.'s providers in California at first. She sent me four (4) erroneous emails for Ms. De Trinidad before she finally gave me the correct one.

3. I am concerned that the Court may have received the wrong impression with regard to my concerns and priorities when it comes to S.C. S.C. is, and always has been my priority. My job is Monday through Friday from 10:00 am until 5:00 pm. S.C. is in school during my work and I take her to school and pick her up. I have a psychology student that serves as S.C.'s childcare to assist me when needed. I do not work at night or go to clubs when S.C. is with me. I have always devoted my time and effort in coordinating S.C.'s medical and educational treatment. I am always taking S.C. to her appointments. Her doctors coordinate with her teachers and vice-versa. Her mother assisted in choosing this school and her doctors before she left Argentina.

4. Since the Court's order, I have personally talked with Dr. Amartino, Dr. Mignagni and the Hospital Aleman authorities in January 2014. I do not know where Respondent has

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Declaration of Petitioner in Opposition to Objections to Undertakings
Page 2

come up with her information, however, each of them have assured me that they are ready, willing and able to treat S.C. immediately upon her return to Argentina. They want to assess her as soon as she returns and coordinate her treatment with her United States doctors – which is why Dr. Amartino instructed me to contact Ana De Trinidad and introduce myself and tell her about S.C.'s doctors in Argentina. The insurance has always covered almost all of S.C.'s treatments since she was about 3 years old. It costs $150 per month. Other aspects of S.C.'s treatments are covered by me and her Certificate of Disability. Respondent has been ordered by the Argentina courts to pay for the insurance, however, if she fails to do so, I intend to pay for it. I've already spoken with the Chief of the hospital insurance.

5. In Argentina, S.C. will once again receive *twice weekly* psychotherapy [which she has NOT been receiving in California], *weekly* speech therapy [which she has not been receiving in California], private school dedicated to children with special needs [she was in public school in California and her teachers confirmed that she was not even in "special needs" classes because they could not "meet her needs"], she will once again be assigned an integrating teacher at her school [the California school did not even know what that was], and her *medical* team will coordinate with her *educational* team [her teachers in California never talked with any of her medical care providers]. Clearly, S.C.'s special needs will be more than cared for in Argentina. To clarify – it wasn't that Argentina "misdiagnosed" S.C. – as Dr. Amartino stated in his affidavit, although Argentina lacked the technology for the specific diagnosis, they had "diagnosed" her by the process of elimination and even given the exact diagnosis merely confirmed that he was providing appropriate treatment. He has now advised me that he has no problem

coordinating all of S.C.'s care with any of the doctors in California. Dr. Amartino no longer works for Hospital Aleman; therefore, I have continued to take her to see him "outside the network" every six (6) months. He reviews everything all the other medical care providers have done and then checks in with S.C. Respondent has always been free to contact any of S.C.'s doctors to check on her progress.

6. I am very "attuned" to my daughter's hygiene and growing needs as a young woman. I ensure that she has a female caregiver [the psychology student], as well as supported by her aunt, her cousins, her adult sister, and her grandmothers -- family members from both my side and her mother's side of the family.

7. Once again, Respondent has not been happy with the Argentina courts. We have had the same judge on our case from the beginning. She knows both of us very well. She knows our case very well. Respondent did not obtain the results she wanted in Argentina and now tries to continue to hold our daughter hostage in the United States until she gets the decision she wants. She was given a full opportunity for this Court to hear all of her complaints and allegations from December 2, 2013 through December 5, 2013; and now, once again, she did not obtain the result she wanted and now challenges the United States Court – continuing to deliberately and try and delay S.C.'s return home.

8. Respondent essentially has called my attorney, Ramon Vasquez and the diplomat from the Argentina Consulate liars. Ricardo Arredondo does not represent me. He has absolutely no reason to mislead this court regarding the law in Argentina. However, Respondent *after a full trial* now tries to hire her own "expert attorneys" to tell the court that all the evidence submitted at trial regarding the Argentina judicial system was false.

9. As Ramon Vasquez testified and tried to explain: I *always* agreed to trips to the United States – they were reduced to writing as a stipulation or agreement, signed by the Defense de Menores and then by the Court so that they became court orders. Any international travel requires the agreement to be signed by both the Court and Minor's Counsel so they can travel through customs! There has been nothing to stop Respondent from seeking a regular visitation schedule in Argentina – other than her refusal to return with S.C. and address the issue. She even admits in her own declaration, that like any country, any order can be brought back to the Court. However, whenever Respondent does not get the results she wants, she will try and get it from another forum or venue. She didn't like the results in Argentina and so wrongfully withheld S.C. and essentially tried to have a complete custody trial under the premise of the Hague Petition. Now, she doesn't like this Court's results, so she is asking for another trial *and* seek a different result from the Ninth Circuit appellate courts. In the meantime, S.C. is suffering. She needs to come home to the environment she grew up in. To her friends and family. To her school and her doctors. Respondent testified that she was having behavioral problems with S.C. I never had any such problems. Dr. Amartino and Dr. Mignagni believe that S.C. is beginning to break down from the stress of being out of her environment and being forced to learn English before she was able to master her mother tongue. I also believe that the night Respondent caught S.C. trying to climb out her window after she skyp'd with me because she was trying to come home.

10. I have spoken with S.C.'s school. She has already missed an entire year. S.C. ***MUST RETURN TO ARGENTINA BY THE END OF FEBRUARY*** to start school or she will be further behind. Upon her return, she will be tested to see if she can go forward to

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Declaration of Petitioner in Opposition to Objections to Undertakings
Page 5

secondary school or needs to repeat the year she missed in California. They will evaluate her school grades from California and administer tests to see if she is ready to go forward. However, if she is not back to start school by the end of this month, she will be further behind.

11. I have done everything possible this Court has ordered in its undertakings. Respondent continues to find every excuse to wrongfully withhold S.C. in the United States. With every day she is held here, she suffers more irreparable emotional and mental injury.

12. I have never kept S.C. from Respondent; Respondent chose to leave Argentina to be with a boyfriend and then met her current husband and chose to stay in California. However, since she has left Argentina, S.C. had been to the United States to visit her at least 5 times [there was a period of over a year Respondent wasn't living in a stable enough environment to have S.C. visit] and numerous times in Argentina. However, once again, all this evidence has been submitted before the judge in Argentina numerous times. Respondent was hoping that the United States court would give her a different result.

13. I agree that an electronic signature affixed hereto shall be deemed to have the same force and effect as my original signature.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __11__ day of February, 2014 at Buenos Aires, Argentina.

This declaration was translated to me word for word from English to Spanish by Alejandro Mercado. I understand fully the contents herein.

_____
DANIEL CARLOS CHIRAMBERRO LARRATEGUI

Larrategui vs. Laborde
2:13-cv-01175-JAM-EFB

Declaration of Petitioner in Opposition to Objections to Undertakings
Page 6

I, ALEJANDRO MERCADO, do declare that I am fluent in both English and Spanish and translated this document word for word from English to Spanish for Daniel Carlos Chiramberro Larrategui.

Dated: 02-11-2014

Alejandro Mercado